

# THE ATTORNEY GENERAL

## OF TEXAS

Question number one
rendered moot by M-205

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

November 16, 1965

Mr. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. C-548

Re:    Whether the Rio Grande
       Independent Rehabilita-
       tion District is an inde-
       pendent school district
       within the meaning and in-
       tendment of the Foundation
       School Program Act (Articles
       2922-11 et seq. V.C.S.)
       authorizing payment of State
       aid benefits to eligible
       school districts and re-

Dear Mr. Edgar:                        lated question.

        Your letter of October 19, 1965, requesting our opinion
relative to the above captioned matter reads in part as follows:

        "The Rio Grande Independent Rehabilitation
    District (comprising Hidalgo and Cameron Counties)
    was created in November, 1964 pursuant to an election
    held under Section 8 of Article 2675k.  It has a
    Board of Directors and officers as authorized under
    Section 7, supra.  And pursuant to Section 9 an ad
    valorem tax has recently been levied by the District
    for the support of its activities and program.  In
    or about July, 1965 it employed a superintendent and
    designated the regular offices of the District to be
    at Mercedes.

        "The Board of Directors of the Rio Grande
    Independent Rehabilitation District has requested
    that I submit for an opinion from the Office of
    Attorney General the following questions.

        "1.  Is the Rio Grande Independent Rehabilita-
    tion District an independent school district within
    the meaning and intendment of the Foundation School
    Program Act (Articles 2922-11, et seq. V.C.S.)
    authorizing payment of State aid benefits to eligi-
    ble school districts?

-2632-

Mr. J. W. Edgar, page 2  (C-548 )

> "2.   Is said Independent Rehabilitation District eligible for financial assistance under Title III of the National Defense Act of 1958 (as amended in 1964 to cover additional subjects), as constituting a part of the public elementary and/or secondary school program of Texas? . . ."

In passing on your question No. 1, we have carefully reviewed all of the provisions under Article 2675k, Vernon's Civil Statutes of Texas, and find that the Legislature has not expressly provided that the provisions of the Foundation School Program Act (Articles 2922-11 et seq., Vernon's Civil Statutes of Texas) shall be applicable to Independent Rehabilitation Districts.

We are also of the opinion that Article 2675k cannot be reasonably construed to mean that the Legislature intended for the Foundation School Program Act to apply to Independent Rehabilitation Districts.  Sections 6(d) and 6(e) of Article 2675k, in our opinion, lend weight to this conclusion.  We quote these two sections as follows:

> "(d)   To provide for the continuation of an educational program for handicapped persons between the ages of six (6) and seventeen (17) inclusive, the training facility operated by and within the District shall be assigned special education teachers (units) through the public school district in which said training facility is located; the basis for establishing, operating, and the formula to be used for determining allocation of each type of special education unit shall be the same as required by the Texas Education Agency of any school district.  (Emphasis added.)

> "(e)   All handicapped persons of scholastic age enrolled and in training in a District shall be credited to the regular school district from which they were referred to said District or in which they resided at the time they entered for training at said District, and such District shall be entitled to receive all State aid and benefits for each referred trainee that said regular school districts from which said trainees were so referred to said District or in which they so resided at the time of their enrollment at the District would have been entitled based on the attendance of said trainees within said scholastic ages."  (Emphasis added.)

Under the Foundation School Program Act, all eligible regular school districts, upon application, receive State aid and benefits directly from the State.  Sections 6(d) and 6(e) of Article 2675k indicate that the Legislature did not intend that Independent Rehabilitation Districts receive State aid and benefits directly.  Subdivision (d) says that the Independent Rehabilitation Districts shall be assigned special education teachers through the public school district in which a training facility of such Rehabilitation District is located.  Subdivision (e) says in substance each handicapped person enrolled in training in a Rehabilitation District shall be credited to his regular school district, and that where such trainee is referred or assigned from a regular school district to a Rehabilitation District, such Rehabilitation District would receive through the regular school district such State aid and benefits that the regular school district would have been entitled to based on the attendance of said trainee had the trainee not been referred or assigned. Based upon our construction of the above two subdivisions, it is our opinion that the only State aid and benefits that the Rehabilitation Districts would be entitled to would come through the regular school districts and not directly from the State.

Based upon the above considerations, we respectfully answer your question No. 1 in the negative.

In considering your question No. 2, we note that the National Defense Act of 1958 authorizes financial assistance to the States in order to establish and maintain a program for strengthening science, mathematics and modern foreign language instruction in public schools.  This Act was amended in 1964 to include additional subjects.  See Sections 441-445, Title 20, USCA, as amended.

Section 441, Title 20, USCA, as amended, authorizes an appropriation of $70 million for the fiscal year ending June 30, 1959, and for each of the five succeeding fiscal years, and $90 million for the fiscal year ending June 30, 1965, and for each of the three succeeding fiscal years, for making payments to state education agencies under this Title for the acquisition of equipment and for minor remodeling of laboratory and other special equipment (other than supplies consumed in use), including audiovisual materials and equipment, printed and published materials, suitable for use in providing education in  science, mathematics, history, civics, geography, modern foreign language, English, or reading in public elementary or secondary schools, or both, and for test grading equipment and special equipment for audiovisual equipment for such schools.  This section further authorizes an appropriation of $5 million for the fiscal year ending June 30,

1959, and for each of the five succeeding fiscal years, and $10 million for the fiscal year ending June 30, 1965, and for each of the three succeeding fiscal years, for payments to state education agencies for the expansion or improvement of supervisory or related services <u>in public elementary and secondary schools</u> in the fields of science, mathematics, history, civics, geography, modern foreign languages, English, and reading and for the administration of the State plan.

As announced in Attorney General's Opinion No. WW-868, dated June 28, 1960, one of the criteria for determining eligibility for financial assistance under the National Defense Act of 1958 is whether a school is a part of the public elementary and/or secondary school program of a State.

Section 403(g), Title 20, USCA, contains the following definition:

"The term 'elementary school' means a school which provides elementary education, as determined under state law or, if such school is not in any State, as determined by the Commissioner."

Section 403(h), Title 20, USCA, contains this definition:

"The term 'secondary school' means a school which provides secondary education, as determined under state law or, if such school is not in any State, as determined by the Commissioner, except that it does not include any education provided beyond grade 12 . . ."

In determining whether Texas Public Junior Colleges were eligible for assistance under Title III of the National Defense Act of 1958, this office said in Opinion No. WW-868:

". . . the Texas Public Junior Colleges are governed, administered and controlled by the Board of Education of the Independent School Districts or Junior College Districts of the particular district in which each is located and all such districts are under the general control of the Central Education Agency as stated in Article 2654-1, Vernon's Civil Statutes. Under Article 2815h, Vernon's Civil Statutes, the Junior College Districts are given power to issue bonds, levy taxes to service same, and levy and collect taxes for their support and maintenance. Therefore, Junior Colleges of Texas are an integral part of the local public school system, and, as such, are a part of the

secondary public school program which includes
high schools and junior colleges. Although from
a curriculum standpoint, the Texas Public Junior
Colleges are considered higher education, since
they offer work parallel to that of the first two
years of the four year colleges, they also come
within the definition of secondary schools in
Texas, being governed and financed in the same
manner on the State and local levels as are other
secondary schools in Texas and we conclude that
this is controlling in determining their legal
status as secondary schools.

"Therefore, it is the opinion of this
Department that Texas Public Junior Colleges
are an integral part of the local public school
system, and, as such, under State law, are a
part of the public secondary school system of
Texas which entitles them to financial assist-
ance under Title III of the National Defense
Education Act of 1958."

Under Article 2675k, Independent Rehabilitation Dis-
tricts are controlled by their Board of Directors and all these
districts are under the general control of the Texas Education
Agency as stated in Article 2654-1. Such districts are author-
ized to levy and collect taxes for their support and maintenance.
One of the purposes of Independent Rehabilitation Districts is to
provide an educational and training program for handicapped per-
sons between the ages of six (6) and seventeen (17) inclusive.
Applying the reasoning quoted from Opinion WW-868 above, we are
of the opinion that Independent Rehabilitation Districts are an
integral part of our public school program of Texas, and that
schools provided by said districts would constitute a part of
the public elementary and/or secondary school program of Texas,
thus enabling such Districts to be eligible for financial assist-
ance under Title III of the National Defense Act of 1958, as
amended.

## S U M M A R Y

The Rio Grande Independent Rehabilitation
District is not an independent school district
within the meaning and intendment of the founda-
tion School Program Act (Articles 2922-11 et seq.
V.C.S.) and therefore is not entitled to receive
State aid and benefits directly from the State.

The Rio Grande Independent Rehabilitation District is an integral part of our public school program of Texas, and schools provided by such district would constitute a part of the public elementary and/or secondary school program of Texas, thus enabling such Districts to be eligible for financial assistance under Title III of the National Defense Act of 1958, as amended.

Very truly yours,

WAGGONER CARR
Attorney General

By *Dean Arrington*

Dean Arrington
Assistant

DA:ra:zt

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman

Malcolm L. Quick
Pat Bailey
Paul Phy
John Fainter
Alan Minter

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright